Filed 9/22/20  In re L.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>L.S.,<br><br>    Defendant and Appellant. | F079650<br><br>(Super. Ct. No. 17CEJ600626-2)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Joseph M. Ahart, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Tracy Yao, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Following a contested hearing, the juvenile court found true that appellant[1] had committed second degree robbery (Pen. Code, § 211). Appellant was continued as a ward of the court. His maximum period of confinement was set at five years four months, which consisted of five years for the robbery, and four months for a prior misdemeanor for which appellant was on probation. That probation was revoked, and probation was reinstated. Appellant was remanded into custody.

Appellant argues that the true finding regarding robbery must be set aside because it was based on insufficient evidence. He also claims that his counsel rendered ineffective assistance during the contested hearing. Finally, he asserts that the juvenile court erred when it denied his motion to set aside the true finding based on alleged new evidence. We reject appellant's arguments and affirm the juvenile court's orders from which appellant appealed.

## BACKGROUND

We summarize the material facts from the contested juvenile hearing. We provide additional facts later in this opinion when relevant to issues raised.

### I. The Contested Hearing Involved Two Juveniles.

Appellant's hearing involved a second juvenile, T.M. The prosecution asserted that T.M. and appellant had both robbed the victim. After the close of evidence, the prosecutor argued that T.M. had been the perpetrator of the robbery, and appellant had aided and abetted T.M. in taking earrings from the victim. The juvenile court, however, ultimately concluded that reasonable doubt existed whether T.M. had participated in this robbery. The court dismissed the robbery charge against T.M.

---

[1] During the pendency of this juvenile proceeding, appellant reached the age of majority.

Despite reasonable doubt existing as to T.M.'s participation in this crime, the juvenile court found beyond any reasonable doubt that appellant had aided and abetted in this robbery. The court sustained the petition against appellant.

**II.     The Robbery.**

The robbery occurred in February 2019 in Fresno, California. The victim was 16 years old. He was walking home alone after school when he was approached by two males. This encounter occurred on the sidewalk of a busy street near a Walmart. A number of students were walking in the area. The victim had never before seen the two suspects.

The two suspects initially walked past the victim before they both turned back and approached him. The suspects asked the victim if he had any "weed." When the victim said he did not, one of the suspects complimented the victim about his pants. Both suspects walked closer to the victim. The first suspect told the victim to take off his pants, and he told the victim to hand over his pants, along with his cell phone and earrings.[2] When making that request, the first suspect placed his hands inside his pocket. When the victim said he would not hand over his property, one of the suspects said, "You're not running." The first suspect then told the victim to just hand over his earrings. The victim testified that, when he was told to hand over his earrings, he was "nervous and scared at the same time." The victim was nervous that the first suspect had a gun or knife in his pocket. On cross-examination, the victim confirmed that the first suspect never pulled out a knife, and that suspect's hands stayed inside his pocket.

The two suspects flanked the victim when this encounter occurred. Because of this, and because he was standing near a fence and a bush and carrying his backpack, the

---

**2**      When asking for the earrings, the suspect referred to them as "cookies." The victim testified that this term meant "earrings."

3.

victim felt like he could not run away. The victim, however, testified that at one point, the two suspects backed away from him a little to let a woman pass them on the sidewalk.

The victim testified that he had realized the two suspects were not "letting [him] alone," and they would not stop asking for his earrings. The victim said he handed over his earrings because they were less expensive compared to his pants or cell phone. He admitted on cross-examination that the first suspect was not aggressive towards him when asking for his property. Instead, the first suspect used a "normal" voice. He also admitted that, other than the positioning of the two suspects and the first suspect having his hands in his pocket, the two suspects were not aggressive towards him.

After the victim handed over his earrings, the two suspects walked away together in the direction of the Walmart.

## III. The Victim's Younger Brother Observed Part Of The Robbery.

The victim's younger brother was in the area, and he observed part of the robbery. He saw two suspects walking towards the victim, and the suspects stopped him. According to the brother, the two suspects were "[v]ery close" to the victim when they spoke to him, and they stood on either side of him.

The brother saw the two suspects walk away from the victim. They walked towards the Walmart and in his (the brother's) direction. According to the brother, the two suspects walked past him and one of them said, "Let's strip this kid too." However, they continued walking past the brother without incident.

## IV. Earrings Are Recovered In Appellant's Possession.

After this robbery took place, the victim's mother recorded video of the two robbery suspects. She had picked up both the victim and his brother in her vehicle, and the victim had reported the theft to her. They drove to the Walmart parking lot, and the

4.

victim spotted the two suspects. When the mother made the recording, the two suspects were standing with a third male.[3]

Later that day, the victim provided this video to police, and the victim identified the two robbery suspects in the video. Police captured still images from the video. At the juvenile hearing, two such photographs, People's exhibits 2 and 3, were moved into evidence.

Based on those images, police were able to identify the robbery suspects as T.M. and appellant, who lived together in a group home.[4] The day after this robbery, an officer located T.M. and appellant, and the officer took them into custody. At that time, appellant was wearing "gold nugget, circular, round earrings," which the officer recovered. T.M. was not wearing any earrings. The officer personally took a photograph of the recovered earrings. That photograph, defense exhibit N, was moved into evidence. In addition, the officer had a CSI technician photograph the same earrings. Those photographs, People's exhibits 4-A and 4-B, were shown at the hearing, and People's exhibit 4-A was moved into evidence.

## V. The Evidence Was In Dispute Regarding The Identity Of The First Suspect And Whether The Victim's Earrings Had Been Recovered From Appellant.

The juvenile court received certain conflicting evidence. First, the identity of the robbery suspects was called into question. After police identified appellant and T.M. from the video, photographic lineups were created for the victim to view. Before viewing the lineups, the victim reviewed the video of the suspects. The victim believed that

---

[3] The victim testified that he could not remember how much time had passed after the robbery until he and his brother were picked up by their mother.

[4] On the day in question, a staff member had driven T.M., appellant, and a third resident of the group home to a medical clinic near the Walmart. At some point, both appellant and T.M. had left the clinic together. They were gone for no more than 10 minutes. When appellant and T.M. went back to the group home that day, a staff member searched them but nothing was found after they were told to "empty their pockets and take off their shoes."

appellant was in one lineup (which he was, and the victim focused on him), but the victim was not sure so he did not want to identify him. In the other lineup, the victim was unable to identify T.M. at all.

In court, the victim identified both appellant and T.M. as the two suspects who had robbed him. The victim, however, admitted that his identifications were based primarily on the clothes and hoodies which the suspects had worn, and which were seen in the video his mother had taken. In court, the victim's brother also identified appellant and T.M. as the two robbery suspects.

According to the victim's testimony, and corroborated by the still images, appellant and T.M. had been wearing all black clothing on the day of this robbery. They both wore black sweatshirts. T.M. had white lettering on his left sleeve, and he wore a "do-rag" on his head, with his hoodie over the do-rag. When T.M. was taken into custody, he was wearing the same black hooded sweatshirt that is seen in the cell phone video. In appellant's room, the officer located a "black sweatshirt with white writing" that the officer recognized from the cell phone video that appellant had been wearing on the day of this robbery.[5]

The disputed identity arose because of a belt buckle. The victim had informed police that the first suspect had been wearing a distinctive "M-shaped" belt buckle when the robbery occurred. In court, the victim identified T.M. as the suspect who had worn that distinctive belt buckle during the robbery. However, in the images taken of T.M. and appellant (People's exhibits 2 & 3) just after this robbery, neither T.M. nor appellant are seen wearing a distinctive belt buckle with an "M" on it. Further, it was impossible to discern whether the unidentified third male in those photographs was wearing such a belt buckle. Police made no attempt to investigate the identity of that third male. Finally,

---

[5] The officer found nothing of evidentiary value in T.M.'s room.

when police took appellant and T.M. into custody, they were not wearing such a belt buckle, and such a buckle was not located when their rooms were searched.[6]

The juvenile court also heard some conflicting testimony about whether or not the earrings recovered from appellant had been the same earrings taken from the victim. Shortly after recovering the earrings from appellant, the officer sent an e-mail to the victim. Attached to that e-mail was a photograph (defense exhibit N), which showed the recovered earrings. The officer called the victim by telephone and asked him if the earrings shown in that photograph were the ones which had been stolen from him. The victim told the officer that the earrings depicted in defense exhibit N were his stolen earrings.

At the hearing, the victim testified on direct examination that the earrings seen in People's exhibit 4-A (taken by the CSI technician) were his stolen earrings. However, he indicated that, based on the light in the photograph, it appeared like these earrings could have diamonds on them, and he reiterated that his stolen earrings did not have diamonds. The victim testified that appellant had been wearing earrings when this robbery occurred. According to the victim, appellant's earrings appeared to have had small diamonds on them.[7] The juvenile court directly asked the victim to clarify if the earrings in People's exhibit 4-A were his stolen earrings, and the victim confirmed that those earrings were the ones which had been taken from him.

On cross-examination, however, the victim agreed that, based on the light in the photograph, the earrings in People's exhibit 4-A looked like they could have diamonds because of "how they shine." The victim was then shown defense exhibit N. The victim

---

[6] Because T.M. was not seen wearing that distinctive belt buckle mere minutes after this robbery, the juvenile court concluded that the prosecution had failed to establish beyond a reasonable doubt that T.M. had participated in this robbery.

[7] The victim testified that he could not remember if T.M. had been wearing earrings during the robbery because T.M. "had a hoodie on."

7.

agreed on cross-examination that the earrings depicted in defense exhibit N were *not* his stolen earrings but, instead, looked like the earrings which appellant had been wearing during the robbery.[8]

In court, the victim's brother was shown People's exhibit 4-A. The brother testified that the earrings in that photograph belonged to the victim. However, when shown defense exhibit N, the brother testified that the earrings in that photograph were different from the earrings in People's exhibit 4-A. According to the brother, the earrings in defense exhibit N did not show the earrings which the victim had worn during this robbery.[9]

In finding true the robbery allegation against appellant, the juvenile court indicated that it was irrelevant that the victim had been unable to identify his earrings in each of the photographs. Instead, the officer had made it clear that the same earrings were in each of the photographs. The court noted that it was reasonable for the victim to say they were different earrings because the photographs were taken at "different angles, different illumination, so they look different, but they are the same earrings." The court also commented that police had not located another pair of earrings during the search "so clearly we have [appellant] the day after the robbery wearing the earrings taken from the victim."

---

[8]    As a reminder, the officer who recovered the earrings from appellant personally took a photograph of those earrings, which was defense exhibit N. The officer had sent that same photograph to the victim via e-mail. The victim had informed the officer that the earrings in that photograph were the ones which had been taken from him.

[9]    As noted by appellant in his opening brief, the earrings recovered from appellant were never shown to the victim in court or admitted into evidence.

## DISCUSSION

**I.     Substantial Evidence Supports The Juvenile Court's True Finding.**

Appellant argues that the juvenile court violated his due process rights by finding that he committed robbery.  He contends insufficient evidence supports the court's true finding.

### A.     Standard of review.

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding.  In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences.  Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court.  Evidence from a single witness, even a party, can be sufficient to support the trial court's findings.  [Citations.]"  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451.)  We must affirm the juvenile court's order if we find "evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof.  [Citations.]"  (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298.)

### B.     Analysis.

According to appellant, the evidence was insufficient to substantiate a true finding for robbery.  He contends that the prosecution failed to prove (1) that force or fear was used to obtain the earrings and (2) that appellant aided and abetted.  He maintains that the trial court's true finding should be reversed.

We reject appellant's assertions.  Substantial evidence established that appellant and the second unidentified suspect intimidated the victim and used fear to commit this

9.

robbery. Sufficient evidence also demonstrates that appellant aided and abetted the commission of this crime.

### 1. Substantial evidence established that fear was used to complete this robbery.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211.) The word "fear" in section 211 refers to two situations: (1) the fear of an unlawful injury to the person or property of the person robbed (or of any relative of his or member of his family); or (2) the fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery. (Pen. Code, § 212.)

To establish that a robbery was committed by means of fear, the prosecution must present evidence that the victim was in fact afraid, and such fear allowed the crime to be accomplished. (*People v. Montalvo* (2019) 36 Cal.App.5th 597, 612.) The fear element is subjective in nature. (*Ibid.*) "However, the victim need not explicitly testify that he or she was afraid of injury where there is evidence from which it can be inferred that the victim was in fact afraid of injury. [Citation.] 'The fear is sufficient if it facilitated the defendant's taking of the property. Thus, any intimidation, even without threats, may be sufficient.' [Citations.] However, given the language of [Penal Code] section 212, the intimidation must not only produce fear, but the fear must be of the infliction of injury." (*Ibid.*)

Whether fear exists may be inferred from the circumstances, and it need not be the result of an express threat or use of a weapon. (*People v. Morehead* (2011) 191 Cal.App.4th 765, 775.) The victim is not required to resist, and the victim's fear need not be extreme. (*Ibid.*) All that is necessary is that the defendant demonstrates either conduct, words or circumstances that were reasonably calculated to produce fear. (*Ibid.*) Intimidation of the victim is sufficient. (*Ibid.*)

10.

In this matter, substantial evidence supports the juvenile court's conclusion that appellant and the other unknown suspect intimidated the victim in order to facilitate this robbery. Upon contacting the victim, the unknown suspect did not ask, but rather told, the victim to take off his pants, and to hand his pants over along with his cell phone and earrings. When making that demand, the unknown suspect placed his hands inside his pocket. When the victim said he would not hand over his property, either appellant or the unknown suspect said, "You're not running." The unknown suspect then told the victim to just hand over his earrings. The victim testified that, when he was told to hand over his earrings, he was "nervous and scared at the same time." The victim was nervous that the unknown suspect had a gun or knife in his pocket.

Appellant and the unknown male flanked the victim when this encounter occurred. Because of this, and because he was standing near a fence and a bush and carrying his backpack, the victim felt like he could not run away.

The victim testified that he had realized appellant and the unknown male were not "letting [him] alone," and they would not stop asking for his earrings. The victim said he handed over his earrings because they were less expensive compared to his pants or cell phone.

The reasonable inferences drawn from this record demonstrate that appellant and the unknown suspect intimidated the victim, who was reasonably in fear. The unknown suspect acted as if he had a weapon in his pocket. Either appellant or the unknown suspect warned the victim not to run away. The two males flanked the victim. Under these circumstances, substantial evidence supports the juvenile court's finding that fear was used to facilitate this robbery.

Appellant argues that "no unlawful demand" for the victim's property occurred. He contends that the unknown suspect "merely asked" the victim for his earrings, and the tone used was not angry or aggressive. He asserts it is possible the victim handed over

11.

his earrings only because the unknown suspect did not stop asking for them.[10]  Appellant also notes that nothing indicates the victim was in immediate danger of being injured.  This incident occurred in broad daylight on a public sidewalk while a number of students were walking in the area.  At one point, both suspects backed away from the victim to allow a female to pass.  According to appellant, although the victim felt nervous and scared, neither suspect made any threats or gestures indicating immediate violence.

Although appellant can point to other possible interpretations of the evidence, we will not reweigh the evidence, assess credibility, or resolve conflicts in the evidence.  (See *In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)  As the trier of fact, it was the juvenile court's domain to determine what inferences to draw from the evidence.  (*Ibid*.)  This record overwhelmingly supports the juvenile court's conclusion that appellant and the unknown suspect used fear to facilitate this robbery.  Consequently, we will not disturb the court's finding.

### 2.    Appellant aided and abetted the unidentified perpetrator.

All persons involved in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals in the commission of the crime.  (Pen. Code, § 31.)  " 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' [Citation.]" (*People v. Delgado* (2013) 56 Cal.4th 480, 486, fn. omitted; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [explaining accomplice liability requirements].)

---

**10**    Appellant contends that the conduct of the unknown suspect was "more akin" to panhandling (Pen. Code, § 647, subd. (c)) than to robbery.

12.

A court may consider certain factors when deciding whether a defendant aided and abetted a crime: (1) presence at the scene of the crime; (2) companionship; and (3) conduct before and after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.) However, neither mere presence at the scene of a crime nor knowledge of, but a failure to prevent it, is sufficient to establish aiding and abetting. (*People v. Campbell*, *supra*, 25 Cal.App.4th at p. 409.)

Here, appellant concedes that, based on his presence and proximity to the victim while the unknown suspect asked for the earrings, the juvenile court "could reasonably infer that appellant had knowledge of the male's desire to persuade [the victim] to give him his earrings." Appellant, however, argues that his mere presence did not establish aiding and abetting. He maintains that he was "merely a passive observer" during this incident.

We reject appellant's various arguments. Appellant and the unknown suspect initially walked past the victim before they both turned back and approached him. The suspects initially asked the victim if he had any "weed." When the victim said he did not have any, one of the suspects complimented the victim about his pants. Both suspects then walked closer to the victim. While the unknown suspect directed the victim to remove his pants, and give them his cell phone and earrings, appellant stood about an arm's length away from the victim. The two suspects flanked the victim. The suspects' concerted action reasonably implies a common purpose. (See *People v. Campbell*, *supra*, 25 Cal.App.4th at p. 409; see also *In re Juan G.* (2003) 112 Cal.App.4th 1, 5 [minor aided and abetted a robbery when standing "within touching distance" of the victim while perpetrator demanded money at knifepoint].) The juvenile court could reasonably conclude that appellant assumed his position near the victim to both intimidate him and block him from escaping.

Moreover, after the victim handed over his earrings, appellant and the unknown suspect walked away together. As they walked past the victim's younger brother, one of

them said, "Let's strip this kid too." That statement is highly suggestive that appellant and the unknown suspect had held an intent to rob the victim. Finally, the day after this robbery, appellant was found in possession of the victim's earrings.

Sufficient evidence supports the juvenile court's determination that appellant aided and abetted in this robbery. The reasonable inferences drawn from the evidence show that appellant acted with knowledge of the unlawful purpose of the perpetrator, appellant held an intent to commit, facilitate, or encourage this crime, and he aided or encouraged this robbery through his actions. (*People v. Delgado*, *supra*, 56 Cal.4th at p. 486.) As such, and based on this record, we must affirm the juvenile court's order because reasonable, credible and solid evidence supports the court's finding that appellant committed robbery. Accordingly, appellant's various assertions are without merit, and this claim fails.

## II. This Record Does Not Demonstrate Ineffective Assistance Of Counsel And Any Presumed Error Was Harmless.

During appellant's opening statement, his counsel informed the juvenile court that it would hear from a defense witness and see photographs that would establish appellant wore either the same or very similar earrings as the stolen ones prior to the date of this robbery. At the conclusion of the People's case, however, appellant rested without presenting any evidence.

Appellant argues that his counsel rendered prejudicially ineffective assistance because he failed to present this evidence. He asserts that the juvenile court's true finding must be set aside.

### A. Standard of review.

Under the federal and state Constitutions, a criminal defendant is entitled to the effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).) To prevail on a claim of ineffective assistance of counsel, a defendant must establish two criteria: (1) that counsel's

14.

performance fell below an objective standard of reasonable competence and (2) that he was thereby prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).) The defendant has the burden of showing both deficient performance and resulting prejudice. (*People v. Lucas* (1995) 12 Cal.4th 415, 436 (*Lucas*).)

**B.    Analysis.**

Appellant notes that the victim's testimony was in conflict regarding whether or not the earrings recovered from appellant were the same earrings which had been taken from the victim. Appellant asserts that no tactical reason exists for his counsel's failure to present additional evidence about the earrings. He further notes that the juvenile court found the allegation against T.M. not true based on mistaken identity. The court, however, found the allegation against appellant true because he was in possession of the allegedly stolen earrings. According to appellant, his counsel's alleged deficient performance was prejudicial.

Respondent contends that, even assuming appellant's counsel acted unreasonably, appellant was not prejudiced. Respondent argues that the juvenile court would not have made a different finding even if this evidence had been introduced.

We conclude that this record does not demonstrate ineffective assistance of counsel. In any event, we also determine that any presumed error was harmless.

**1.    This record does not demonstrate ineffective assistance.**

An appellate court is to defer to counsel's reasonable tactical decisions, and there is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. (*Lucas*, *supra*, 12 Cal.4th at pp. 436–437.) An appellate court will reverse a conviction "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.) In conducting this review, the appellate court considers whether the record contains any explanation for counsel's actions; if the record sheds no light on

counsel's actions, the claim is not cognizable unless counsel was asked for an explanation and failed to provide one, or unless there could be no satisfactory explanation for the actions taken. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; *People v. Kelly* (1992) 1 Cal.4th 495, 520.)

In this matter, the record provides a possible explanation for counsel's actions. At the hearing, the victim identified the earrings seen in People's exhibit 4-A as his stolen earrings. However, on cross-examination, the victim agreed that, based on the light in the photograph, the earrings in exhibit 4-A looked like they could have diamonds because of "how they shine." The victim was then shown defense exhibit N. The victim agreed on cross-examination that the earrings depicted in defense exhibit N were *not* his stolen earrings but, instead, looked like the earrings which appellant had been wearing during the robbery.[11]

During closing argument, appellant's counsel argued, in part, that the victim's story had changed "a bit" about the recovered earrings. According to counsel, both the prosecutor and the defense had shown the victim photographs, and the victim had said that the recovered earrings were not his. Counsel asserted that the victim had identified the suspects solely based on their clothing. Counsel contended that the pictures of appellant and T.M. did not depict the people who had committed this robbery, and he asked the court to find the charge not true.

This record discloses a possible tactical reason why appellant's counsel did not introduce additional evidence regarding the earrings, which were allegedly in appellant's possession prior to this robbery. It appears that counsel elected to focus on the victim's

---

[11]     As a reminder, the officer who recovered the earrings from appellant personally took a photograph of those earrings, which was defense exhibit N. The officer had sent that same photograph to the victim via e-mail. The victim had informed the officer that the earrings in that photograph were the ones which had been taken from him.

16.

change in testimony. Counsel also focused on the fact that neither appellant nor T.M. were seen with the distinctive M-shaped belt buckle.

We presume that appellant's counsel rendered conduct that fell within the range of reasonable professional assistance. (*Lucas*, *supra*, 12 Cal.4th at pp. 436–437.) This record does not affirmatively disclose that counsel had no rational tactical purpose for his alleged omission. (See *People v. Fosselman*, *supra*, 33 Cal.3d at p. 581.) To the contrary, it appears that, after the victim agreed that his earrings were not depicted in defense exhibit N, appellant's counsel made a tactical choice not to introduce any additional evidence.

Based on this record, we cannot state that there is no satisfactory explanation for the actions taken by defense counsel. As such, appellant has failed to meet his burden to establish that his counsel's performance fell below an objective standard of reasonable competence. (See *Strickland*, *supra*, 466 U.S. at pp. 687–688.) Thus, appellant cannot establish ineffective assistance of counsel. In any event, we also determine that any presumed error was harmless.

### 2. Any presumed error was harmless.

Appellant asserts that, because his counsel failed to present this evidence, he was denied the right to present a defense. He contends that his counsel's alleged error amounts to a federal constitutional violation, requiring prejudicial review under *Chapman v. California* (1967) 386 U.S. 18. Under that standard, we must declare the error harmless beyond any reasonable doubt. (*Id.* at p. 24.)

We reject appellant's arguments regarding the standard of prejudice under *Chapman*. Instead, the standard under *Strickland* applies for a claim of ineffective assistance of counsel even when counsel's alleged error involves federal constitutional rights. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008–1009.) To establish prejudice under *Strickland*, appellant must show a reasonable probability that he would

17.

have received a more favorable result had counsel's performance not been deficient. (*Strickland*, *supra*, 466 U.S. at pp. 693–694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217–218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694; accord, *Ledesma*, at p. 218.) "The likelihood of a different result must be substantial, not just conceivable." (*Harrington v. Richter* (2011) 562 U.S. 86, 112.)

Here, we agree with respondent that, even assuming appellant's counsel performed deficiently in failing to present additional evidence, appellant's claim fails because he cannot demonstrate prejudice. After the jurisdictional hearing, appellant filed a motion to set aside the true finding that he had committed robbery.[12] Appellant claimed that he owned "identical" earrings to the ones shown in People's exhibit 4-A and defense exhibit N. In support of his motion, appellant attached photographs depicting himself wearing those allegedly identical earrings prior to the date of this robbery. Appellant also attached a statement from a defense investigator who had interviewed a potential witness. This potential witness had shown certain photographs from social media to the investigator, which purported to show appellant wearing similar earrings prior to the date of this robbery.

The juvenile court denied appellant's motion. The court determined that the photographs accompanying it did not amount to "new" evidence. The court concluded that this evidence had been known to appellant during the contested hearing. In any event, the court noted that, even if it were to consider appellant's photographs (and assuming appellant could lay foundation for them), the court could not say that the

---

**12** In section III., below, we address the juvenile court's denial of appellant's motion to set aside the true finding. Appellant's motion was filed by a new attorney on his behalf. At the close of the contested hearing, appellant's counsel had indicated that he was leaving the public defender's office and a new attorney would be assigned to represent appellant at the dispositional hearing.

earrings were "clearly the same" as those which the victim identified in court as his own. The court stated that appellant had possessed the victim's earrings and, combined with the identification and other circumstances of the crime, it was beyond a reasonable doubt that appellant was one of the two perpetrators of this robbery. According to the court, appellant's new evidence "doesn't call into question" its findings.

Based on the juvenile court's statements, appellant has not shown a reasonable probability that he would have received a more favorable result had his attorney introduced additional evidence during the contested hearing regarding the earrings. (See *Strickland*, *supra*, 466 U.S. at pp. 693–694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217–218.) Our confidence in the outcome of this matter is not undermined. (See *Strickland*, at p. 694; accord, *Ledesma*, at p. 218.) Therefore, appellant has not met his burden to establish prejudice. (See *Lucas*, *supra*, 12 Cal.4th at p. 436.) Consequently, any presumed error was harmless, and appellant has not established ineffective assistance of counsel.

## III.    The Juvenile Court Did Not Abuse Its Discretion In Denying The Motion To Set Aside Its True Finding.

Appellant claims that the juvenile court violated his due process rights by denying his motion to set aside the true finding.

### A.    Standard of review.

A juvenile court has discretion whether to modify or terminate a previous order. (*In re Corey* (1964) 230 Cal.App.2d 813, 832.) Under an abuse of discretion standard, we will not disturb the lower court's decision unless it " 'exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse of discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

19.

**B.     Analysis.**

Appellant's motion was made pursuant to Welfare and Institutions Code sections 775 and 778. Welfare and Institutions Code section 778, subdivision (a)(1), states in relevant part that, upon a change of circumstances or new evidence, any person having an interest in a child may petition the juvenile court for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.[13]

Appellant concedes that the juvenile court "may have been correct" when it ruled that the evidence accompanying his motion was not new. Appellant, however, contends that the court never assessed whether there was a change in circumstances. According to appellant, once the court reviewed the motion, it was on notice that appellant's counsel had failed to utilize allegedly exculpatory evidence at the contested hearing. Appellant maintains that the court should have realized that appellant was not afforded his due process rights during the hearing, which included effective assistance of counsel.

Appellant further argues that, although his counsel should have raised ineffective assistance in the motion to set aside the true finding, the juvenile court should have addressed this change in circumstances independently.[14] He maintains that the court's denial was a miscarriage of justice, claiming that the alleged exculpatory evidence tended to raise reasonable doubt. He claims that the court abused its discretion. We disagree.

As an initial matter, we have already determined that this record does not demonstrate ineffective assistance of counsel during the contested hearing. In any event, appellant did not raise that issue in his motion. As such, we agree with respondent that the court had no independent duty to explore any alleged ineffective assistance of counsel

---

[13]     Welfare and Institutions Code section 775, the other statute which appellant cited in his motion, permits a juvenile court to change, modify or set aside any order "as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

[14]     As we noted earlier in this opinion, new counsel for appellant prepared the motion to set aside the true finding.

20.

or an alleged change in circumstances. This record does not demonstrate an abuse of discretion in that regard.

Further, we agree with the court that the photographs accompanying appellant's motion did not represent new evidence. It is clear that this evidence was reasonably known to appellant at the time of the contested hearing. (See *People v. Perez* (2020) 47 Cal.App.5th 994, 999 [newly discovered evidence is that which is discovered after trial or judgment, and could not have been discovered earlier with reasonable diligence].)

Finally, it is apparent that the court viewed the photographs accompanying the motion. The court concluded that it could not state that the earrings in appellant's new photographs were "clearly the same" as those which the victim identified in court as his own. The court reiterated that it had found appellant to be in possession of the victim's earrings and, combined with the identification and other circumstances of the crime, it was beyond a reasonable doubt that appellant was one of the two perpetrators of this robbery.

Based on this record, the court did not deny appellant's motion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (See *People v. Rodrigues*, *supra*, 8 Cal.4th at pp. 1124–1125.) The court's ruling did not fall outside the bounds of reason under applicable law and relevant facts. (See *People v. Williams*, *supra*, 17 Cal.4th at p. 162.) Therefore, we will not disturb the court's ruling on appeal because an abuse of discretion is not present.

**<u>DISPOSITION</u>**

The juvenile court's orders appealed from are affirmed.

                                                  LEVY, Acting P.J.

WE CONCUR:


FRANSON, J.


PEÑA, J.